**Joseph LEVINE, d/b/a Crushing Music, Paul DiFranco, individually and d/b/a Crazy Chords Music, Mark Bellack, d/b/a Crazy Chords Music, and Norman Dolph, Plaintiffs,**

v.

**McDONALD'S CORPORATION, Leo Burnett Company, Inc., Com/Track, Inc. and Gary Fry, Defendants.**

No. 89 Civ. 2428.

United States District Court, S.D. New York.

April 11, 1990.

---

Abeles, Clark and Osterberg by Robert C. Osterberg, Stuart Prager, New York City, for plaintiffs.

Cowan, Leibowitz & Latman by Robert J. Bernstein, New York City, for defendants Com/Track, Inc. and Gary Fry.

Satterlee Stephens Burke & Burke by Mario Aieta, New York City, for defendants McDonald's Corp. and Leo Burnett Co.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiffs allege that defendants infringed a copyright plaintiffs hold in a song entitled "Life Is a Rock (But the Radio

Rolled Me)." The alleged infringing work is a song that appears in various renditions in commercials of defendant McDonald's Corporation ("McDonald's").

## I. FACTS

The following facts are not in dispute, except where noted. In the early 1970s, plaintiffs Paul DiFranco and Norman Dolph wrote "Life Is a Rock (But the Radio Rolled Me)" (hereinafter referred to as "LIFE"). An arrangement of this song by DiFranco and plaintiffs Mark Bellack and Joseph Levine was recorded by a group called Reunion and released by RCA in 1974. The song became one of the ten most popular songs in the United States shortly after it was released and sold more than 750,000 copies.

The song consists of a verse section, which is at issue here, and a chorus section, which is not at issue in this case. The lyrics of the verse section of LIFE consist of a list of Rock and Roll icons.[1] The verse section utilizes what the parties call a "patter" technique, in which the words are sung in a rapid tempo. The patter section of LIFE is nine measures long and consists of the pitch "G" repeated 128 times in a constant sixteenth note pattern, followed by eight repetitions of the pitch "A" (one step up in the scale), and ends with eight repetitions of "G" again.

Plaintiffs obtained certificates of registration of claims to copyright in versions of LIFE from the United States Copyright Office on December 1, 1972 and August 22, 1974.

Defendants' work at issue is a song used in various renditions in McDonald's commercials in February 1989, called the "Menu Song" ("MENU"). That song also includes a patter section, the lyrics of which recite the food and beverage items on the McDonald's menu.[2] The patter section of MENU also consists of the rapid singing of the lyrics in a constant sixteenth note pattern of one or two pitches.

Plaintiffs have submitted evidence that members of the public who were exposed to the McDonald's commercials using MENU identified MENU as being similar to LIFE. For example, radio disc jockeys announced their opinions that the songs were identical, and trade publications received letters noting the similarity of the songs.

A third work is relevant to this case, as defendants argue that certain elements of MENU were taken from it rather than from LIFE. In 1987, defendant Leo Burnett Company, Inc. ("Burnett") retained Levine and his company, Joey Levine Crushing Music, to compose a jingle for its client, McDonald's. Levine and Crushing Music composed a song entitled "Good Time/Great Taste McDonald's" (hereinafter "GOOD TIME/GREAT TASTE"). Levine thereafter assigned all rights to GOOD TIME/GREAT TASTE to Burnett as agent for McDonald's. GOOD TIME/GREAT TASTE has been used in numerous McDonald's commercials since 1988 as McDonald's theme song.

Defendants have submitted an affidavit and reply affidavit of Earl V. Spielman, a musicologist, in which he concludes that the underlying melody and harmony of MENU is the same as that of GOOD TIME/GREAT TASTE, that the harmony of LIFE is a basic blues progression, and that the patter melody of LIFE lacks creativity and originality. On this basis the defendants claim that the verse section of LIFE is not protectible under the copyright laws and Lanham Act. Plaintiffs have submitted the affidavit of Judith Finell, also a musicologist, in which she concludes that the harmony of MENU is "strikingly similar" to the harmony of LIFE, that LIFE's

---

1. The first four measures of the lyrics of LIFE read "B.B. Bumble and the Stingers/Mott the Hoople, Rachel Singers/Lonnie Mack and Twangin' Eddie/here's my ring we're goin' steady/Take it easy, take it higher/liar liar, house of fire/Locomotion, Poco, Passion/Deeper Purple, Satisfaction...."

2. The first four measures of the lyrics of MENU are "Big Mac, Mc–D–L–T/a Quarter Pounder with some cheese/Filet o' Fish, a hamburger/a cheeseburger, a happy meal/McNuggets, tasty golden french fries/(regular and larger sizes)/salads (chef or garden or a/chicken salad oriental)...."

harmony is not a basic blues progression, that the two songs are substantially similar in a number of ways, and that the patter section of LIFE evinces significant creativity.

Defendants move for an order pursuant to Fed.R.Civ.P. 56 granting summary judgment in their favor on plaintiffs' copyright and Lanham Act claims on the ground that there is no similarity of protected expression between the works at issue. Plaintiffs, in addition to opposing defendants' motion for summary judgement, move for an order pursuant to Rule 56(d) specifying that there is no genuine issue of material fact with respect to (a) whether plaintiffs are the owners of valid and enforceable copyrights in LIFE, (b) whether LIFE was copied in the making of MENU, and (c) whether MENU is substantially similar to LIFE.[3]

## II. DISCUSSION

Summary judgment under Fed.R.Civ.P. 56 will be granted only if the movant shows that (1) there is no genuine issue as to any material fact, and (2) movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the "fundamental maxim" is that the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987) (quoting *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). "Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.* at 57. *See also Merritt Forbes v. Newman Investment Securities, Inc.*, 604 F.Supp. 943, 952 (S.D.N.Y.1985). The existence of contradictory expert affidavits does not preclude summary judgment unless those affidavits establish the existence of a genuine issue of material fact.

██ A plaintiff may establish a copyright claim by demonstrating (1) the ownership of a valid copyright, (2) that the infringer had access to the plaintiff's work, and (3) that protected elements of the two works are substantially similar. *Walker v. Time Life Films*, 784 F.2d 44, 48 (2d Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir.1989). For purposes of this motion, defendants concede that plaintiffs hold a valid copyright in LIFE and that defendant had access to plaintiffs' recorded version.

██ Defendants argue that, regardless of plaintiffs' valid copyright in their song as a whole, any similarities between LIFE and MENU relate to material that is not protectible under the copyright laws. Defendants reach this conclusion by dissecting LIFE into component parts—pitch, rhythm and harmony. They argue that the pitch and rhythm (which combine to form melody) of the patter section of LIFE is so simple as to be unprotectible, and that the harmony and underlying melody is the same as GOOD TIME/GREAT TASTE. They thus arrive at the conclusion that, irrespective of whether defendants copied portions of plaintiffs' song, they copied no protectible elements and therefore cannot be held for infringement of plaintiffs' copyright. The Court is unable to agree with defendants for two reasons. First, an issue of fact exists as to whether the harmony underlying MENU is substantially similar to the harmony underlying LIFE. Second, even if it could be said as a matter of law that the only similarity of copyrightable expression between the songs is with respect to the patter section, it is not clear

---

**3.** Plaintiffs also move for an order to strike certain material from defendants' motion papers on the ground that the defendants misrepresented to the Court that Levine wrote all seventeen versions of GOOD TIME/GREAT TASTE contained in Exhibit A of the Affidavit of Barry Krause. The passage in the Krause Affidavit to which plaintiffs' object is, at most, ambiguous, and in any event has no bearing on the Court's resolution of the present motions. Accordingly, the motion to strike is denied.

to the Court that that section is so lacking in creativity that it is non-copyrightable.

▮ Summary judgment is appropriate in a copyright case where a comparison of the two works at issue shows that the only similarities between them relate to non-copyrightable elements. *See Ring v. Estee Lauder, Inc.,* 874 F.2d 109 (2d Cir.1989); *Narell v. Freeman,* 872 F.2d at 910–12; *Frybarger v. International Business Machines Corp.,* 812 F.2d 525, 529 (9th Cir. 1987); *Walker v. Time Life Films,* 784 F.2d at 48; *Hoehling v. Universal City Studios,* 618 F.2d 972, 977 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). *See also Warner Bros. v. American Broadcasting Companies,* 720 F.2d 231, 239–40 (2d Cir.1983) ("we have recognized that a court may determine non-infringement as a matter of law on a motion for summary judgment ... because the similarity between two works concerns only 'non-copyrightable elements of the plaintiff's work' ").

To succeed, defendant's argument requires that the Court determine as a matter of law the similarities between the two songs, a determination that is usually one for the jury. *See Warner Bros. v. American Broadcasting Companies,* 720 F.2d at 239; *Twentieth Century–Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327 (9th Cir.1983); *Hoehling v. Universal City Studios, Inc.,* 618 F.2d at 977. Only where a court is able to find that no reasonable jury could find the two works substantially similar is it appropriate to take the similarity issue away from the jury. *See Warner Bros.,* 720 F.2d at 240.

▮ To begin with, the parties disagree over whether the underlying melody and harmony in MENU are the same as that in LIFE. Defendants argue that the harmony and underlying melody in MENU is distinct from the harmony in LIFE and is in fact the same as the harmony and melody of GOOD TIME/GREAT TASTE, which is indisputably owned by McDonald's.

Plaintiffs argue that MENU's harmony is "strikingly similar" to LIFE's, and argue that the GOOD TIMES/GREAT TASTE melody in the background of MENU is simply an embellishment that does not affect the analysis.

The exhibits do establish to the Court's satisfaction that the GOOD TIME/GREAT TASTE melody is present as an underlying melody in MENU and is not present in LIFE. Nonetheless, as Judge Hand put it, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro–Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936).

As to the harmony, plaintiffs' and defendants' experts are in sharp disagreement. Spielman concludes that the harmony behind MENU is the same in all material respects as that underlying GOOD TIME/GREAT TASTE and is substantially different from that underlying LIFE. Finell does not opine on the relationship between MENU and GOOD TIME/GREAT TASTE, but concludes that the harmonies of LIFE and MENU are "strikingly similar." While the Court finds Spielman's refutation of Finell's analysis generally persuasive, the inferences on this summary judgment motion must be drawn in plaintiffs' favor, and the Court is unable to hold that no reasonable jury could reach Finell's conclusion.[4]

Moreover, even assuming that defendants were correct that as a matter of law there is no substantial similarity between the harmonic progressions in MENU and LIFE, the Court does not agree with defendants' conclusion that there is no issue of fact as to what *other* similarities there are between the two songs. Defendants argue that the only similar elements are in the so-called "patter" sections of each song, which defendants say contain the following similar elements: (1) the use of the patter technique to communicate many words rap-

---

4. Further, Spielman's dispute with Finell as to whether a particular harmonic move found in both songs (but apparently not in GOOD TIMES/GREAT TASTE) is a "peculiarity", "dis-tinctive" and "unexpected" is not one that the Court could properly resolve on a motion for summary judgment.

idly, using one note per syllable; and (2) the setting of the verbal patter on a single pitch repeated over and over in sixteenth notes, with a brief move to the pitch one step up.

This seems an unduly cramped view of plaintiffs' work.[5] The plaintiffs argue, supported by their expert, that there are additional similarities between the two songs, including tempo, meter, structure, instrumentation/arrangement, style of composition and presentation. Plaintiffs' expert concludes that the differences between the two songs "are subtle and would not be apparent to the common listener," and that the various similarities "join together to give an unmistakable impression of sameness."

■ Defendants argue that, since plaintiffs did not originate and cannot monopolize standard pop/rock instrumentations, or the use of a rapid tempo, these common elements are also unprotectible and cannot form the basis of an infringement claim. However, while these elements may not be copyrightable in and of themselves, it has long been held that "[a] copyrightable compilation can consist mainly or entirely of uncopyrightable elements." *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 204 (9th Cir.1989). *See also Merritt Forbes & Co. v. Newman Investment Securities, Inc.,* 604 F.Supp. at 951 ("Originality may also be found in the selection and ordering of particular facts or elements.") Thus, defendants' efforts to show that particular elements of LIFE are not, in and of themselves, copyrightable do not dispose of the issue.

■ A recent Seventh Circuit case is illustrative. In *Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990), the plaintiff sought to recover for infringement of her greeting card line by defendants' cards, which con-

tained some but not all of the elements of plaintiff's cards, and contained elements not on plaintiff's cards. The Seventh Circuit, following its earlier decision in *Atari v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982), stated that

> dissection of the subject matter into copyrighted and unprotected elements is generally rejected in favor of examining the "total concept and feel" of the copyrighted work. *Atari,* 672 F.2d at 614.

The Court cautioned that while such dissection was not appropriate, the substantial similarity inquiry must "take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by copyright." Such dissection is inappropriate since the substantial similarity inquiry is conducted from the perspective of the "ordinary observer" who "unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960). 886 F.2d at 939. The court went on to uphold the trial court's jury instruction to the effect that, while the common elements of the cards were not copyrightable, "the combination of these elements in an arrangement or layout is entitled to copyright protection, however, if you find that arrangement or layout to be original and unique." The Seventh Circuit finally noted:

> The minute differences which [defendant] painstakingly incorporated to prevent a mirror image copy of [plaintiff's] cards are insignificant in light of the nearly identical composition and appearance used in both card lines. [Defendant's] contention that there is no support in law for the proposition that a compilation of common elements is subject to copyright protection is ridiculous.

---

**5.** The Court notes that in his initial report prepared for defendants before this suit was brought, in addition to pitch, rhythm and harmony Spielman included " 'form and structure,' the way in which an entire work is organized, in terms of sections, (verses, chorus, etc.), and the

way in which sections are organized in terms of phrases and/or subsections," in his description of the most important components of music for purposes of determining substantial similarity. (Ex. P 4).

*Id.* at 940. Accordingly, in the present case, the plaintiffs' use of various non-copyrightable elements is itself copyrightable if they have been arranged in a unique and recognizable way.[6]

This is not to disagree with the cases cited by defendants for the proposition that "what is important is not whether there is substantial similarity in the total concept and feel of the works, ... but whether the ... protectible expression in [the plaintiff's work] is substantially similar to the equivalent portions of [the defendant's work]." *Cooling Systems & Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 493 (9th Cir.1985) (citation omitted). *See also Walker v. Time Life Films, Inc.,* 784 F.2d at 48; *Hoehling v. Universal City Studios, Inc.,* 618 F.2d at 979 ("wrongful appropriation is shown by proving a 'substantial similarity' of *copyrightable* expression" (emphasis in original)). In this case, however, there are issues of fact concerning the scope of the "equivalent portions" of the two songs. Defendants have argued only that single elements, such as the monotonic repetition of sixteenth notes, are unprotectible, but have not convinced the Court that plaintiffs did not create a protectible work by combining various common elements so as to produce a unique expression of music.

In conclusion, this Court is hesitant, given the statements of plaintiff's expert in her affidavit and the Court's own consideration of the songs submitted by the parties, to say that there is no issue for the jury as to the similarity between LIFE and MENU. For that reason, defendants' motion for summary judgment cannot be granted.

Alternatively, even if the only similarity between the two songs was the patter section, the Court disagrees with defendants that this section lacks sufficient creativity to be accorded copyright protection.

■ The fact that LIFE can be identified as a part of a musical genre does not detract from its protectibility so long as LIFE's authors have not simply copied previously existing songs. *See Hein v. Harris,* 175 F. 875, 877 (C.C.S.D.N.Y.), *aff'd,* 105 C.C.A. 399, 183 F. 107 (2d Cir.1910) (fact that two songs were of the "ragtime" style held to be immaterial, since "the collocation of notes, which constitutes the composition, becomes [the author's] own even though strongly suggestive of what has preceded."); *MCA v. Wilson,* 425 F.Supp. 443, 452 (S.D.N.Y.1976), *modified on other grounds,* 677 F.2d 180 (2d Cir.1981) (defendants' argument that plaintiff's "boogie woogie" song was attributable to common musical forms rejected). As in those cases, plaintiffs could have composed a patter song in numerous ways, but chose instead the particular expression that became LIFE. Thus, there is no merit to defendants' argument that recognition of a copyright in LIFE by a jury in this case will allow plaintiffs "to tie up the centuries old concept of a patter song."[7]

Nor have defendants shown that the similarities between LIFE and MENU follow unavoidably from the use of the patter song concept. If that were the case, MENU would resemble other patter songs as much as it resembles LIFE. However, the evidence submitted thus far leads to the conclusion that MENU resembles LIFE more than any other patter song, and it remains for the jury to decide whether that similarity is substantial. Since defendants cannot argue that all songs that utilize the patter technique are non-copyrightable, their argument turns on the issue of whether plaintiffs' use of that technique is

---

6. Defendants' conclusion that "plaintiffs' monotone" does not "add[ ] up to a distinctive or memorable tune," (Dft.'s reply brief at 19) is unsupported and contradicts the evidence submitted by plaintiffs that LIFE was distinctive and memorable enough that the public remembered it when MENU was broadcast.

7. The weakness in this vein of defendants' argument is evident when one considers the myriad of songs in the "patter" genre which no one could argue are substantially similar to LIFE. In addition to the patter songs noted by defendants, much popular music that is known as "rap" would presumably fall into the "patter" genre, as would Gilbert & Sullivan's "Modern Major General", and the verse section of the recent Billy Joel hit "We Didn't Start the Fire."

sufficiently creative to be given copyright protection.

■ Plaintiffs, in composing the verse section of LIFE, chose to use a certain pitch 128 consecutive times, then move up to the next pitch for eight repetitions, and then return to the original pitch for eight additional repetitions. Each repetition was given a durational value of one sixteenth note. A jury could find the resulting nine measure composition sufficiently creative to warrant copyright protection. Repetitiveness does not make a work unoriginal. *See Fred Fisher, Inc. v. Dillingham,* 298 F. 145 (S.D.N.Y.1924) (L. Hand, J.) (finding infringement of an eight note figure written in two measures and repeated over and over, which the court said "has a very simple melodic character of its own."). Nor does the use of a minimal number of notes in a work containing other substantial musical elements prevent a composition from being copyrightable. *See* Compendium of Copyright Office Practices, § 403 ("Johnny One–Note", while not copyrightable on its melody alone, has copyrightable because of its rhythm and harmony).[8]

The cases cited by defendants do not convince the Court that, as a matter of law, the portion of LIFE plaintiffs allege defendants copied is too simple or lacking in creativity to be protectible under the copyright laws. Cases in which music has been found too simple for copyright protection involved works that were substantially less complex than the work at issue here. For example, in *Smith v. George E. Muehlebach Brewing Co.,* 140 F.Supp. 729 (W.D. Mo.1956), where the plaintiff's work consisted of the words "Tic Toc", juxtaposed with "Time for Muehlebach", and scored to the notes "C" and "G" to produce the sound and tempo of a clock ticking, the court held that "if all an author of a musical composition does is to add a mechanical application of sound to a word that is itself

not copyrightable, and adds the same to a descriptive phrase already dedicated to the public domain, without the use of even the most simple harmonious chords, he has no musical composition subject to copyright." *Id.* at 731. The relevant section of LIFE is nine measures long, could easily be found to be more than the simple "mechanical application of sound", and uses not only "harmonious chords" but other elements plainly lacking in the work at issue in *Smith.*

Many cases cited by defendants are distinguishable from the present one. In *Lampert v. Hollis Music, Inc.,* 138 F.Supp. 505 (E.D.N.Y.1956), where the court found the similarity between two songs to be fortuitous rather than copying, the sequence at issue consisted of only three notes, repeated three times in plaintiff's song and five times in defendant's. *See also Alberto–Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705 (7th Cir.1972) (phrase "most personal sort of deodorant" not subject to copyright protection.) The patter section of LIFE is lengthier, significantly more complex, and is a more substantial section of the entirety of plaintiffs' work than the minimal compositions at issue in those cases. While the court in *Shapiro, Bernstein & Co. v. Miracle Record Co.,* 91 F.Supp. 473, 474 (N.D.Ill. 1950), stated in express dicta that "this bass is too simple to be copyrightable," that case involved the alleged infringement of the bass line of a song which the court held the plaintiff had not composed. Here, there is no dispute that plaintiffs wrote LIFE.

Accordingly, as in *Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir.1988), the Court "cannot say as a matter of law that [the plaintiff's song] was not original enough to be accorded copyright protection." For this reason also, defendants' motion for summary judgment is denied.[9]

---

8. Plaintiff's expert also notes in her affidavit the songs "One Note Samba", by Antonio Carlos Jobim, which contains nine continuous measures using only the pitch "F", followed by four measures of "b-flat," and "Ein Ton," by Peter Cornelius, which consists of 83 repeated pitches of "B."

9. Accordingly, defendants' motion to dismiss plaintiffs' Lanham Act claim on the ground that any similarities between the songs relate to basic and unoriginal material is denied.

Plaintiffs' motion for an order narrowing the issues for trial must also be denied. Given the Court's rulings above, whether plaintiffs own valid and enforceable copyrights in LIFE, whether defendants copied LIFE in making MENU, and whether MENU is substantially similar to LIFE are all disputed issues of material fact that must be left for the jury.

## CONCLUSION

For the above reasons, defendants' motion for summary judgment is denied. Plaintiffs' motions for an order narrowing the issues for trial and to strike material from defendants' motion papers are also denied. The parties are ordered to appear for a pre-trial conference on April 24, 1990.

SO ORDERED.